J. A. JONES CONSTRUCTION CO. and Aetna Casualty
& Surety Co., Plaintiffs in Error, v. LAWRENCE
BROTHERS, INC., a Corporation, Defendant in Error.
—419 S.W.(2d) 186.

Western Section, at Jackson. November 21, 1966.

Certiorari Denied by Supreme Court September 18, 1967.*

James W. McDonnell, Jr., Memphis, Canada, Russell
& Turner, Memphis, of counsel, for appellant.

_____
* Supreme Court concurs in result only.

416

William F. Kirsch, Jr., and Frierson M. Graves, Jr., Memphis, Heiskell, Donelson, Adams, Williams & Wall, Memphis, of counsel, for appellee.

BEJACH, J. This suit was instituted in the Circuit Court of Shelby County, Tennessee by Lawrence Brothers against J. A. Jones Construction Company, referred to as "Jones" as principal, and Aetna Casualty and Surety Company as surety for recovery of $6,559.30, allegedly due under the provisions of a surety bond executed by Jones and Aetna in favor of the City of Memphis, pursuant to a construction contract awarded Jones for the construction of the William F. Bowld Hospital in Memphis. The defendants, in answer to interrogatories and at the trial, conceded that the bond was executed and that the copy of the bond which was attached as an exhibit to the declaration was a true copy of the bond. The case was tried without a jury, and following the trial, the Court awarded a judgment in favor of the plaintiff for the amount sued for. Subsequently, a motion was made by defendants to reopen the proof to include the entire specifications as an exhibit, and this motion was denied. An appeal was prayed, both from the judgment and the order denying defendants' motion, and the appeal was thereafter perfected.

The testimony in this cause was not extensive, and many of the facts are undisputed. A contract was awarded by the City of Memphis for the construction of the hospital. A construction bond was executed on the form regularly used by the City of Memphis on its construction projects. Construction of the hospital was commenced and completed by Jones. In the construction, it was necessary for a large amount of hardware to be furnished and installed. That portion of the hardware with which this

suit is concerned consisted of hinges, sometimes referred to as "butts", doorstops, doorknobs, latches, etc. A complete list of all the hardware is attached to Exhibit 5 in the record, but in general it relates to the standard types of hardware found on doors and windows in a commercial building. The specifications of this job provided that the architect, with the approval of the contractor, should award a hardware "subcontract" on the basis of competitive bids. This was done. As is customary in most cases of this kind, the architect prepared the hardware schedule, Exhibit 6, and submitted these schedules to the various hardware suppliers for bids. The schedule was not seen by Jones until after the bids were received and the name of the low bidder submitted to the contractor. Conmat, Inc. was the low bidder and received the order for the hardware. Jones had separate methods for awarding subcontracts and for ordering materials from a material supplier. These are easily distinguishable and reliable and readily recognizable in the trade. A subcontract is executed on a form especially prepared for that purpose, such as Exhibit 9, and closely resembles the form of the principal contract. It bears the heading "Subcontract" and describes the parties as contractor and subcontractor. On the other hand, an order for materials from a supplier is executed on a purchase order form which purchase order form usually describes only the items and quantities, together with the agreed price. The purchase of materials by Jones from Conmat was made on the purchase order form, pursuant to directions from the architect. Insofar as the building trade is concerned, this would constitute a purchase of materials and not a subcontract. Such is the contention of appellant, but this Court is of opinion that the bond should be enforced according to its terms.

Conmat, Inc. maintained a warehouse at its place of business in Memphis. Jones did not know (and did not know at the time of trial) whether any of the hardware was to be delivered by Conmat, Inc. out of its own stock. The invoices from Conmat to Jones bore the notation "Materials stored in Conmat, Inc. Warehouse to be shipped on notice". (Exhibit 7a). So far as Jones knew, Conmat could have originally acquired the hardware through intermediate brokers. The only positive information which Jones had was that the hardware was being shipped from Conmat's warehouse. In any event, the bulk of the hardware was ordered by Conmat, Inc. from various manufacturers, the hinges, stops and various door hardware, being ordered from Lawrence Brothers. The orders were filled by Lawrence Brothers by shipping the hardware to the Memphis warehouse of Conmat, Inc. (Exhibit 1, Lawrence R. 28; Griffin R. 81). The invoice was sent to Conmat at its Memphis warehouse and no copies were sent to Jones. The bulk of the hardware ordered from Lawrence Brothers remained in the warehouse of Conmat for two or three months before it was delivered to the job site. The hardware was delivered to the job in Conmat cartons and there was no indication on the cartons that it was shipped from Lawrence Brothers.

All of the hardware was delivered to the job site from Conmat's warehouse in Conmat's trucks, and none of it was delivered in Lawrence Brothers trucks or direct from Lawrence Brothers to the job site. When it arrived the quantities were checked against the hardware list, this check being made by an employee of Jones and an employee of Conmat. Thereafter, Conmat had no further connection with the hardware or its installation. Conmat merely purchased and delivered the hardware. All of the

installation was done by employees of Jones; all handling after it reached the job was done by employees of Jones, unless assisting in checking the accuracy of the quantities as accepted. As a practical matter, once the hardware was delivered, Conmat ceased to have any connection with it.

In the building trade, one who merely delivers material to a job site with no responsibility for performing in labor on the job in connection with that material is considered a furnisher of material. On the other hand, one who performs or furnishes labor on the job in fulfilling one of the construction requirements is considered to be a subcontractor. To place it in proper context, a person who merely sold and delivered hardware to a job would be considered in the trade to be a furnisher of hardware; whereas, someone who went a step further and undertook the additional responsibility of installing or affixing the hardware, would be classed as a subcontractor. There are separate methods of payment usually employed in the building trade for paying furnishers and subcontractors. Customarily, furnishers are paid in full within 30 days; whereas, subcontractors are paid on the same basis as the contractor, based on the progress of the work with a retainage of ten (10%) percent pending final completion and acceptance. Appellant contends that Conmat was paid as a furnisher. Jones paid Conmat the entire purchase price of the hardware, which was delivered to this job, save only some $2,000 which is being held subject to the order of the Bankruptcy Court. Conmat made some payments to Lawrence Brothers but did fail to pay approximately $6,600, which is the subject of this suit. No demand was ever made by Lawrence Brothers on Jones until long after Jones had made payments to Conmat and, in fact,

no demand was made on Jones until after Conmat went into bankruptcy.

The bond executed by Jones and Aetna was on the standard form employed by the City of Memphis in public projects. The construction of this hospital was a joint enterprise between the City and the Federal government, and was broader than was necessarily required. It was both a payment bond and a performance bond, and the obligation was assumed by principal and surety and ran in favor of the City of Memphis. By its terms it required the principal, that is, the contractor, to assure all undertakings under the contract, and to assure and protect all laborers and furnishers of material on said work, both as required by Chapter 182 of the Acts of the General Assembly of Tennessee of 1899 as amended by Section 12-412 Tennessee Code Annotated, and also independently of this statute. Under the terms of the bond the principal agreed with the City of Memphis that the contractor "shall fully pay all of the labor, material and work used by the principal or any immediate or remote subcontractor or furnisher of material under him in the performance of said contract. * * *." (Exhibit A, plaintiff's declaration).

Contentions of the Parties:—Lawrence Brothers, the original plaintiff and defendant in error in this appeal, contends that the payment of money owed it by Conmat, Inc. is guaranteed under the terms of the bond and Jones denies this. Lawrence Brothers contends first that Conmat was a subcontractor within the meaning of the bond. It contends, therefore, that it is a furnisher of a subcontractor and as such not covered by the bond. Jones denies that Conmat was a subcontractor, but contends that it was a furnisher. It is Jones' position that whether a party is

a furnisher or a subcontractor is a question of fact. Under the facts of this case, Conmat was a furnisher, was treated by the architect as a furnisher, performed no labor on the job which would entitle it to be classed as a contractor, was paid as a furnisher and considered itself to be a furnisher. This can best be illustrated by the fact that Jones considered Conmat to be a furnisher, according to appellant. The record shows that Jones considered Conmat to be a furnisher. Record H 6, see where the architect considered Conmat to be a furnisher, and Conmat considered itself to be a furnisher. In the alternative, Lawrence Brothers contends that even if Conmat were a furnisher, the bond covers not only the suppliers which furnished materials to the contractor or a subcontractor, but also suppliers who furnished materials to another supplier, who in turn furnishes materials to a subcontractor, even to a remote degree. In short, Lawrence Brothers contend that the bond covers remote furnishers in the same way that it covers the source of supply of material all the way back to the manufacturer, or presumably even beyond that. Jones denies that the bond has such a broad application. It is the contention of Jones that a fair reading of the terms of the bond does not support such an interpretation. Jones, the plaintiff in error, further contends that the Lawrence Brothers cannot recover under any bond executed pursuant to section 12-417 T.C.A., because no notice was given as required by section 12-421 T.C.A. Finally, Jones contends that Lawrence Brothers has no standing to sue on the bond independently of the statute, because there is no privity between Lawrence Brothers and Jones.

This cause comes to us under the provisions of 27-303 T.C.A. as a nonjury case for trial de novo, with a pre-

sumption of correctness and with the right of a third party beneficiary to appeal, and we see no reason why the judgment of the lower court should not be affirmed.

The costs are adjudged against appellant and its surety.

Avery, P.J.(W.S), and Carney, J., concur.